# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
# (DIVISION 4 - MINNEAPOLIS)

| | |
|---|---|
| JT JOYCE, III,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC,<br><br>　　　　　Defendant. | Case No.: 0:21-cv-00067<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 USC §1681** *et seq.* |

NOW COMES Plaintiff JT Joyce, III, ("Plaintiff"), by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendant Experian Information Solutions, Inc. ("Experian"):

## INTRODUCTION

1.　　Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. by Defendant Experian. Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.

## JURISDICTION AND VENUE

2.　　This Court has federal question jurisdiction because this action arises out of violations of federal law. 28 U.S.C. §§ 1331. Jurisdiction is also proper pursuant to 15 U.S.C.

1

1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

4. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in the city of Monticello in Wright County, Minnesota.

6. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

7. Defendant Experian is a credit reporting agency, as defined in 15 U.S.C. § 1681a(f). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8. During all time pertinent to this Complaint, Experian was authorized to conduct business in the State of Minnesota and conducted business in Minnesota on a routine and systematic basis.

9. Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Experian regularly furnishes consumer reports to

third parties for monetary compensation, fees and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency," as defined by 15 U.S.C. §1681a(f) of the FCRA.

10. During all time pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violation by Defendant was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

**FACTUAL ALLEGATIONS**

12. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13. Defendant reports consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

14. Defendant's credit reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an

apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

15. Defendant gains access to consumer information from various sources, including furnishers who provide consumer information to Defendant, and information Defendant independently sources itself or through third party providers/vendors or repositories, including computerized reporting services like PACER.

16. The information reported by Defendant contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendant's consumer credit reports.

17. The vast majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

18. These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

19. FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

20. Amount of debt owed is a major factor in a consumer's credit score; by reporting a debt as outstanding when it is in fact discharged, a CRA creates an impression that the Amount of currently owed debts is higher than it actually is thereby impacting a consumer's credit score.

21. Payment history refers to whether a consumer has paid his or his bills in the past, and whether these payments have been timely, late or missed.

22. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

23. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

24. Defendant obtains and reports consumer bankruptcy information in both the Public Records section of consumer credit reports, as well as individual account tradelines.

25. Defendant had notice of Plaintiff's bankruptcy discharge through independent collection of consumer information as well as from information furnished by tradeline furnishers.

26. Defendant is well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

27. Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Defendant obtains the bankruptcy case information, as well as from information provided to Defendant from furnishers of account/tradeline information.

28. Rather than following reasonable procedures to assure maximum possible accuracy, Defendant reports information regarding pre-bankruptcy debts even if that information ignores or contradicts information provided by furnishers of account/tradeline information or information contained in public court records that Defendants have obtained through its independent efforts, or could easily obtain through reasonably available public records.

29. Experian is on continued notice of its inadequate post-bankruptcy reporting procedures, including inaccurate balances, and account and payment statuses, through the

thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a Chapter 7 discharge.

30.     Plaintiff filed for Chapter 7 Bankruptcy in October 2019 in the United States Bankruptcy Court for the District of Minnesota Fourth Division, case no. 19-43080.

31.     Plaintiff signed a reaffirmation agreement with Ally Bank for his auto loan no. 673925* ("Ally Account") on or about November 7, 2019 and Plaintiff continued to make payments as agreed.

32.     There were no objections during Plaintiff's Chapter 7 Bankruptcy, or proceedings to declare any debt "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq.  There were also no requests for relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any personal liability for listed debts.

33.     Accordingly, Plaintiff received an Order of Discharge, discharging his personal liability on the dischargeable debts on February 4, 2020.

34.     Upon information and belief, following Plaintiff's Chapter 7 Bankruptcy, Defendant prepared one or more credit reports concerning Plaintiff.

35.     Defendant failed to report any of Plaintiff's Chapter 7 Bankruptcy case information, including the case number, court, filing date, and discharge date.

36.     Non-party Trans Union accurately reported Plaintiff's Chapter 7 discharge in the public records section of his credit report.

37.     Non-party Equifax accurately reported Plaintiff's Chapter 7 discharge in the public records section of his credit report.

38. Defendant also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

39. For accounts included in Plaintiff's Chapter 7 Bankruptcy, Defendant is generally required to report the status of these debts as discharged through bankruptcy with zero balances, unless the furnishers provide information showing that a debt was excludable from discharge.

40. Nevertheless, Defendant continued to report one or more accounts inaccurately.

41. Experian inaccurately reported Plaintiff's Upstart Network Inc Account ("Upstart Account") account no. L10604X with monthly charge offs between August 2019 and March 2020 (before the bankruptcy petition was filed until after the discharge), instead of accurately reporting the status of this pre-petition debt as included in or discharged in Chapter 7 Bankruptcy with a $0 balance.

42. Experian also reported the Upstart Account with an Account Status of "Charge-off" having a $2,074 Balance owed and a Past Due of $2,074, when the Upstart Account was discharged in Plaintiff's bankruptcy and therefore has a $0 balance.

43. Experian was *not* reporting Plaintiff's Ally Financial Account that was reaffirmed during his bankruptcy. Plaintiff's Experian credit report stated: "No open active accounts," and only listed "Closed Accounts."

44. Failing to report Plaintiff's open/active account for which Plaintiff makes timely monthly payments damages Plaintiff's FICO credit score.

45. On or about July 17, 2020, Plaintiff mailed a dispute letter via certified mail to Experian.

46. In Plaintiff's dispute letter, Plaintiff stated that he had filed for bankruptcy on October 10, 2019 and that his Ally Account was not included in his bankruptcy and all payments were timely made.

47. Plaintiff also stated in his dispute letter that the Upstart Account was included in his bankruptcy and asked for his credit report to be corrected.

48. On or about September 2, 2020, Experian responded to Plaintiff's dispute by stating Experian had updated Plaintiff's Upstart Account to accurately report as "Discharged through Chapter 7/ Never late" and had remove the inaccurate balance and monthly charge-off reporting which it had previously reported as occurring after the bankruptcy was filed.

49. In Experian's September 2, 2020 dispute response, Experian failed to address the Ally Account.

50. On or about October 16, 2020, Plaintiff obtained his updated Experian credit report for review.

51. In that report, Experian was no longer reporting the Upstart Account at all.

52. Experian correctly reported Plaintiff's Ally Account as "Open/Never late."

53. However, following the dispute, Experian inaccurately updated Plaintiff's Capital One Account no. 517805*, opened in January 2016, ("Capital One Account") from reporting an Account Status of "120 days late" and no balance being reported as owed, to "Account charged off. $1,038 written off." and a Balance owed of "$1,038 as of Jan 2020."

54. Further, Experian was still inaccurately reporting "No public records reported" in the Public Records section of Plaintiff's credit report.

55. Experian knew Plaintiff had filed for Chapter 7 and been discharged because Plaintiff told Experian in his July 17, 2020 dispute and Experian responded accurately that Plaintiff's Upstart Account was in fact discharged in his Chapter 7.

56. Notably, the other national consumer reporting agencies Equifax and Trans Union *accurately* reported the Capital One Account as discharged in bankruptcy with zero balance, and also reported Plaintiff's bankruptcy information in the public records section.

57. Inexplicably, following Plaintiff's dispute, Experian also began reporting for the first time Plaintiff's MacCredit credit card account no. 780720*, opened in October 2018 ("MacCredit Account").

58. Experian inaccurately reported the MacCredit Account with an Account Status of "Account charged off. $1,038 written off.", a Payment History of "90 days Late," and a Balance owed of $4,375 as of August 2019, when the MacCredit Account was actually discharged in Plaintiff's bankruptcy.

59. Notably, the other national consumer reporting agencies Equifax and Trans Union *accurately* reported the MacCredit Account as discharged in bankruptcy with zero balance.

60. Inexplicably, following Plaintiff's dispute, Experian also began reporting for the first time Plaintiff's Wells Fargo credit card account no. 446542*, opened in February 2016 ("Wells Fargo Account").

61. Experian inaccurately reported the Wells Fargo Account with a Status of "Open," a Payment History of "180 days late" as of October 2020, and a Balance of $5,683 owed as of September 2020, when the Wells Fargo Account was actually discharged in Plaintiff's bankruptcy.

62. Notably, the other national consumer reporting agencies Equifax and Trans Union *accurately* reported the Wells Fargo Account as discharged in bankruptcy with zero balance.

63. Upon information and belief, Experian additionally and/or alternatively had notice of Capital One's, MacCredit's, and Wells Fargo's unreliable procedures to properly update the reporting of pre-Chapter 7 debt upon discharge of a bankruptcy.

64. Defendant inaccurately reported the statuses of Plaintiff's Capital One, MacCredit, and Wells Fargo debts, even though the debts were in fact discharged, Plaintiff is no longer personally liable for the debt, and Defendant has actual knowledge Plaintiff filed for and received a Chapter 7 Bankruptcy discharge. Defendant therefore has reported information contradicted by Defendant's own records and independent knowledge of Plaintiff's bankruptcy discharge in unreasonable reliance on a furnisher.

65. Consequently, Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

66. Upon information and belief, Plaintiff applied for a credit card with Capital One and received a higher interest rate due to Defendant's inaccurate reporting which was published to Capital One in their review of Plaintiff's application.

## COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681 et seq.

67. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

68. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the

10

banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

69. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

70. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

71. The FCRA requires consumer reporting agencies like Defendant to follow reasonable procedures to assure maximum possible accuracy of consumer information.

72. Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that arose prior to and were included in the consumer's bankruptcy.

73. Consequently, Defendant routinely reported inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendant possesses information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

74. Defendant knew or should have known of its obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendant from which Defendant is on notice of their unreasonable procedures.

75. Defendant has obtained or has available substantial written materials that apprised Defendant of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

76. Upon information and belief, Defendant Experian regularly conducts voluntary public records searches (daily) with the intention of including bankruptcy information on the credit reports it sells to other parties.

77. Upon information and belief, Defendant Experian voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge.

78. Despite knowledge of these legal obligations, Defendant acted willfully in consciously breaching known duties and deprived Plaintiff of his rights under the FCRA.

79. Defendant violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure.

80. Defendant possesses information from which Defendant should know the reported information is inaccurate, as Defendant received notice from Plaintiff that his bankruptcy had been discharged long after the Capital One, MacCredit, and Wells Fargo Accounts were opened.

81. Defendant is well aware that discharged debts should not be reported as late, past due, with outstanding balances, or with inaccurate account statuses such as charge off, after the debt is discharged.

82. Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when Defendant knew or should have known the information Defendant is reporting is inaccurate, and/or otherwise contradicted

by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

83. In addition to violating 15 U.S.C. § 1681e(b), Defendant also violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of Plaintiff's dispute.

84. Even after Plaintiff notified Defendant of the inaccurate information in Plaintiff's credit file, including Plaintiff's bankruptcy filing, Experian continued to inaccurately report information concerning the dispute.

85. When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to conduct a reasonable reinvestigation into the disputed information within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

86. When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

87. Additionally, the consumer reporting agency must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

88. Defendant Experian's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

    a. Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

    b. Failing to consider all relevant information while investigating Plaintiff's dispute.

      c.      Failing to include all relevant information when notifying any furnisher of Plaintiff's dispute.

      d.      Failing to properly update the inaccurate information concerning Plaintiff's dispute, including accurately reporting Plaintiff's bankruptcy information and the effect of Plaintiff's bankruptcy discharge.

89. Instead of reasonably reinvestigating Plaintiff's dispute, Defendant Experian continued to report inaccurate information about Plaintiff despite actual knowledge of Plaintiff's bankruptcy discharge through its own collection of consumer information, Plaintiff's dispute, and the dispute response, which acknowledges Plaintiff's bankruptcy discharge.

90. Experian inaccurately reported discharged accounts with balances and inaccurate account statuses even though Plaintiff's dispute advised Experian to accurately report Plaintiff's bankruptcy information.

91. Defendant Experian's violations of 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i were willful.

92. Alternatively, Defendant Experian was negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

93. Defendant's inaccurate and negative reporting damaged Plaintiff's creditworthiness, as Defendant reports the existence of charge offs and owed balances after the discharge of Plaintiff's Chapter 7 bankruptcy.

94. Defendant's inaccurate reporting of Plaintiff's information has caused Plaintiff to suffer from stress, anxiety, headaches, frustration, and emotional and mental pain and anguish, a decreased credit score. Moreover, Defendant's inaccurate reporting of has deprived Plaintiff of credit opportunities.

95. Defendant's inaccurate reporting also damaged Plaintiff's creditworthiness and credit utilization rate by reporting large balances he did not owe.

96. Consequently, Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

97. Defendant is a direct and proximate cause, as well as a substantial factor in causing actual damages and harm to Plaintiff, including, but not limited to, credit denials, embarrassment, anguish, and emotional and mental pain.

98. Defendant is therefore liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant for the following:

Fair Credit Reporting Act Violations

(a) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(b) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(c) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(d) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(e) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 8th day of January 2021.

                                s/Jenna Dakroub
                                Jenna Dakroub
                                Bar Number: 0401650
                                Attorney for Plaintiff JT Joyce, III
                                Price Law Group, APC
                                8425 N. 85th Way
                                Scottsdale, AZ 85258
                                Telephone: (818) 600-5513
                                Fax: (818) 600-5413
                                Email: jenna@pricelawgroup.com